UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SONNY G.,[1]<br><br>　　　Petitioner,<br><br>　v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security<br>Administration,[2]<br><br>　　　Respondent. | Case No. 1:20-CV-00507-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court for consideration is Sonny G.'s Petition for Review of the Respondent's denial of social security benefits, filed on November 2, 2020. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On April 10, 2018, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Both applications allege disability beginning on March 2, 2018. The applications were denied initially and on reconsideration.

A hearing was conducted on March 10, 2020, before Administrative Law Judge (ALJ) Wynne O'Brein-Persons. After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision on April 29, 2020, finding Petitioner has not been under a disability since the alleged onset date through the date of the written decision. (AR 13-25.) The Appeals Council denied Petitioner's request for review on September 11, 2020, making the ALJ's decision final. Petitioner timely filed this action seeking judicial review of the ALJ's final decision. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's written decision, Petitioner was twenty-seven years of age. Petitioner completed high school and has previous work experience in agriculture, trailer production, and RV production. (AR 205.) Petitioner claims he is unable to work due to physical impairments, including: microscopic polyangiitis ANCA vasculitis, chronic kidney failure, and hypertension. (AR 204.)

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since March 2, 2018, the alleged onset date. (AR 15.) At step two, the ALJ found Petitioner had the following medically determinable, severe impairments: microscopic polyangiitis ANCA vasculitis (MPA), chronic kidney failure/glomerulonephritis, undifferentiated and mixed connective tissue disease, and hypertension. (AR 15.) The ALJ found also at step two, that Petitioner's complaints of depression and anxiety were nonsevere. At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 18-19.)

The ALJ next found Petitioner retained the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: he "can stand and/or walk for only two hours in an 8-hour workday[;] must be able to alternate positions between sitting, standing, and walking every hour[;] can frequently balance, stoop, kneel, crouch, and crawl[;] and must avoid concentrated exposure to vibrations or hazards." (AR 20.) Relying upon testimony

**MEMORANDUM DECISION AND ORDER - 3**

from the vocational expert, the ALJ concluded at step four that Petitioner would be unable to perform his past relevant work. (AR 23.) At step five, the ALJ found jobs exist in significant numbers in the national economy that Petitioner can perform given his age, education, work experience, and RFC. Thus, the ALJ determined Petitioner is not disabled.

## ISSUES FOR REVIEW[3]

1.     Whether the ALJ properly evaluated the medical opinion evidence?

2.     Whether the ALJ properly evaluated Petitioner's subjective symptom testimony?

3.     Whether the ALJ properly evaluated the lay witness statements?

4.     Whether the ALJ's RFC assessment and disability determination are supported by substantial evidence?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

---

[3] Having found that remand is warranted based on the second and third issues, the Court will not address Petitioner's fourth issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008).

**MEMORANDUM DECISION AND ORDER - 4**

139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

## DISCUSSION

**1.    Medical Opinion Evidence**

Petitioner argues the ALJ erred in evaluating the medical opinions of Christopher Keller, M.D., and Leslie Arnold, M.D. (Dkt. 16.)[4] Petitioner contends the ALJ failed to provide specific and legitimate reasons for discounting these medical opinions. Respondent maintains the ALJ properly considered the medical evidence and explained the bases for her evaluations of the opinion evidence as required by the applicable regulations. (Dkt. 17.)

**A.    Legal Standard**

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). These regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the regulations currently provide that the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).

---

[4] Petitioner's opening brief mentions DDS medical consultant, Lee Lindquist, M.D., but does not assign any error by the ALJ concerning Dr. Lindquist's opinion. (Dkt. 16 at 7.) Accordingly, the Court will not address Dr. Lindquist's opinion.

**MEMORANDUM DECISION AND ORDER - 6**

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ needs to address only the remaining factors - treatment relationship,

**MEMORANDUM DECISION AND ORDER - 7**

specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court will apply the revised regulations upon its review here.

Under the revised regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar.

**MEMORANDUM DECISION AND ORDER - 8**

3, 2021)). "In sum, the Commissioner must explain his [or her] reasoning and specifically address how he considered the supportability and consistency of the opinion, and his [or her] reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court will proceed to its analysis.

### B.    Dr. Christopher Keller

Keller, a nephrologist, has treated Petitioner since March 4, 2018. On March 2, 2020, Keller completed a medical assessment of Petitioner's physical ability to perform work-related activities. (AR 687-690.) Keller opined Petitioner could regularly work six hours in a day, and would be absent two days per month. (AR 687.) Keller concluded Petitioner can stand/walk a total of six hours in a regular eight-hour work day, can stand/walk without interruption for one hour, and has no sitting limitations.

Further, Keller opined that Petitioner can occasionally carry twenty pounds and frequently carry ten pounds; is able to frequently perform all postural activities except for climbing; and can perform all other physical functions frequently except for pushing/pulling. Keller assessed one environmental restriction to moving machinery due to fatigue. Keller concluded that Petitioner's "kidney disease with associated fatigue [is] the main limiting factor" to his ability to perform work activities. (AR 687-690.)

The ALJ found Keller's opinion that Petitioner could work only six hours per day "only somewhat persuasive." (AR 22.) The ALJ identified three bases for discrediting the

**MEMORANDUM DECISION AND ORDER - 9**

opinion: 1) internal inconsistency, 2) inconsistency with the medical record, and 3) inconsistency with Petitioner's activities of daily living. (AR 22.) For the reasons that follow, the Court finds the first and second bases of the ALJ's evaluation are free of error. However, the third basis does not support the ALJ's evaluation of Keller's opinion, because the ALJ failed to properly consider Petitioner's daily activities. [5]

As to the first basis, the ALJ found Keller's opinion limiting Petitioner to six hours of work per day incongruent with Keller's findings that Petitioner can stand and walk for up to a total of six hours, and has an unlimited ability to sit. The Court finds the ALJ's analysis reasonable and supported by substantial evidence given Keller's finding that Petitioner's primary limiting factor is fatigue. If an individual is able to stand and walk for up to six hours in an eight hour work day, with fatigue as his only limitation, and has no limitations on sitting, it is reasonable to conclude the individual could work a full work day if the job allowed for appropriate standing and sitting limitations to reduce fatigue. Here, the RFC assessment limits Petitioner to standing and walking for only two hours in an eight-hour workday, and requires Petitioner be able to alternate positions every hour. (AR 20.) When considering the written decision in its entirety, the Court finds the ALJ's rational on this first basis is easily discernable and her conclusion reasonable. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an

---

[5] In making this determination, the Court considered only the records cited by the ALJ in the written decision.

**MEMORANDUM DECISION AND ORDER - 10**

agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

As to the second basis for discrediting Keller's opinion, Petitioner contends the ALJ failed to distinguish which of his impairments was in remission, and failed to appreciate that Petitioner's fatigue from chronic kidney disease was the basis for Keller's opinion. (Dkt. 20 at 7.) Consequently, Petitioner argues the ALJ erred in discrediting Keller's opinion as not consistent with the medical record. The Court respectfully disagrees.

Earlier in the written decision, the ALJ discussed medical records reporting Keller's successful treatment of Petitioner's MPA,[6] achieving total remission in August of 2019. (Dkt. 21.) The ALJ recognized Petitioner "may remain somewhat symptomatic with fatigue" following remission, but found "the objective medical evidence establishes the claimant's condition significantly improved within twelve months of the alleged disability onset date." (AR 21.) The ALJ next separately addressed Petitioner's chronic kidney disease, stating:

> I have given due consideration to the claimant's chronic kidney disease and associated impairments by imposing limitations from strenuous physical activity with only two hours of standing and walking, with the ability to alternate between sitting, standing, and walking every hour, and some additional postural and environmental limitations, as detailed above. However, the evidence does not support additional limitations that exceed the claimant's residual functional capacity.

---

[6] Microscopic polyangiitis ANCA vasculitis (MPA), was one of Petitioner's sever impairments noted above at page 3.

**MEMORANDUM DECISION AND ORDER - 11**

(AR 21.)

The ALJ's discussion of the medical records addressing separately Petitioner's MPA and chronic kidney disease demonstrates the ALJ recognized Petitioner had suffered from two conditions, contrary to Petitioner's argument. When viewing the record and decision in their entirety, the Court finds the ALJ did not err in finding Keller's opinion inconsistent with the medical record.

As to the final basis, however, the ALJ erred in finding Keller's opinion not consistent with Petitioner's daily activities. As discussed more fully below, the ALJ failed to properly evaluate Petitioner's daily activities. Because remand is necessary on that issue, the Commissioner should reevaluate the persuasiveness of Keller's opinion after reconsidering Petitioner's symptom statements and activities of daily living.

### C.    Dr. Leslie Arnold

Arnold is a DDS medical consultant who reviewed Petitioner's applications for benefits at the reconsideration level on January 4, 2019. (AR 68-89.) Arnold opined Petitioner could perform a reduced range of medium work. (AR 22, 76-77, 86-87.) The ALJ found Arnold's opinion "somewhat persuasive," stating:

> The medical consultant is a non-treating, non-examining medical source. However, his opinion is based upon a thorough review of the available medical record, and a comprehensive understanding of agency rules and regulations. For the most part, I find these opinions are internally consistent and well supported by a reasonable explanation and the *available* evidence. (1F-3F). As such, I find these opinions are somewhat persuasive. However, this expert did not have the same opportunity as the undersigned to review the evidence submitted through date of the hearing (4F-8F), or to see the claimant and hear his testimony. After considering all the evidence of

**MEMORANDUM DECISION AND ORDER - 12**

> record, and construing it in a light most favorable to claimant, I find that the
> claimant is limited to light work with limited standing and walking, the
> ability to alternate between sitting, standing, and walking every hour, and
> some additional postural and environmental limitations, as detailed above.

(AR 22) (emphasis in original).

Petitioner argues the ALJ erred by applying the consistency factor in a manner that is incongruent with the controlling regulation, by analyzing the internal consistency of the opinion rather than evidence from other medical sources. (Dkt. 16 at 7.) Further, Petitioner asserts the ALJ erred by basing her supportability and consistency findings on the evidence available to Arnold instead of the evidence within the record as a whole. Respondent contends the ALJ complied with the regulations in evaluating the supportability and consistency of Arnold's opinion and, regardless, any error was harmless. (Dkt. 17.)

The Court finds the ALJ complied with the applicable regulations in explaining her reasoning finding Arnold's opinion somewhat persuasive. The ALJ discussed the supportability and consistency factors, stating: "I find the[] opinion[] [is] internally consistent and well supported by a reasonable explanation and the *available* evidence." (AR 22) (emphasis in original). The ALJ further noted Arnold's opinion is based on a thorough review of the available medical record. Thus, the ALJ evaluated the supportability of the opinion based on Arnold's "reasonable explanation," and its consistency with the available medical record. *See* 20 C.F.R. §§ 404.1520c(c)(1), (c)(2); 416.920c(c)(1), (c)(2).

**MEMORANDUM DECISION AND ORDER - 13**

Admittedly, the ALJ's discussion of these factors is somewhat confusing by her use of the phrase "internally consistent," in light of the regulatory definitions for the supportability and consistency factors. *See Id.* (Supportability relates to the internal explanations by the medical source and consistency considers evidence from other sources).[7] Any error in this regard is harmless, however, because the ALJ assigned a more restrictive exertional level of work than Arnold opined was her assessment. (AR 20-22) (concluding Petitioner is limited to light work with additional limitations, as opposed to medium level work as Arnold found).[8]

## 2.      Subjective Symptom Testimony

Petitioner challenges the ALJ's evaluation of his subjective symptom testimony, arguing the ALJ erred by dismissing his statements without providing clear and convincing reasons for doing so. (Dkt. 16.) Respondent contends the ALJ reasonably evaluated Petitioner's symptom testimony and offered valid reasons, supported by substantial evidence, for discounting his allegations of debilitating symptoms. (Dkt. 17.)

---

[7] Petitioner does not assign this same error to the ALJ's use of the phrase "internally inconsistent" during her evaluation of Keller's opinion. (AR 22); (Dkt. 16, 20) (challenging the ALJ's failure to explain her finding of an internal inconsistency in Keller's opinion, but not that the ALJ erred in applying the consistency factor in a manner incongruent with the regulations.) Petitioner therefore waived any such claim of error relevant to the ALJ's evaluation of Keller's opinion. *Carmickle*, 533 F.3d at 1161 n. 2.

[8] Notably, Petitioner's reply brief does not persist in arguing the ALJ erred in her evaluation of Arnold's opinion. (Dkt. 20.)

**MEMORANDUM DECISION AND ORDER - 14**

A.      **Legal Standard**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[9] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

---

[9] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

**MEMORANDUM DECISION AND ORDER - 16**

### B.    Petitioner's Statements and Testimony

Petitioner completed an adult function report on April 24, 2018. (AR 212-220.) In the report, Petitioner states his "lifestyle has changed dramatically due to my illnesses and medication. I'm very limited [in] my daily activities and social life. I'm trying to adapt to my new lifestyle even tho[ugh] I have a hard time believing what I'm going through now." (AR 220.)

Petitioner describes his daily activities as: "wake up at 8 am get child ready to get picked up from grandma, Mondays and Wednesdays clinic/lab work appointments, other days at home watching TV, stay up cannot fall asleep till after 1 am." (AR 213.) Petitioner reports he is able to dress, shower, and attend to personal care needs without assistance, but must sit down to do so. Petitioner relies on others to drive, cook, and shop for him. He no longer engages in certain activities due to weakness and lack of motivation, including: grilling outside, standing, completing household work, playing basketball, and drawing. Petitioner reports he can walk one block before needing to rest for an hour.

At the hearing conducted on March 10, 2020, Petitioner testified he is prevented from working by fatigue, an inability to stand for more than forty-five minutes, and swelling in his hands. (AR 38.) Petitioner stated that, during the day he performs household chores such as laundry, vacuum, and house cleaning, but he needs to take breaks either by sitting down for a while or napping. Family members assist with yardwork, cooking, and other tasks. Petitioner attends his daughter's school functions and

**MEMORANDUM DECISION AND ORDER - 17**

activities, but testified that he does not grocery shop because he gets tired walking around and does not drive due to anxiety. (AR 40, 45.) Petitioner stated he would like to return to full time work but is unsure if he could "hack it" due to anxiety, and having to stand and sit for too long. (AR 43-44.)

## C.      Analysis of ALJ's Decision

In the written decision, the ALJ considered Petitioner's subjective symptom testimony concerning his physical impairments, concluding that, although Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 20-21.) After discussing the medical records, the ALJ further stated: "claimant's statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent with the claimant's activities of daily living." (AR 21.)

Thus, the ALJ gave two reasons for rejecting Petitioner's symptom testimony: 1) inconsistency with the evidence in the record; and 2) inconsistency with activities of daily living. The Court will discuss each reason in turn below.

### 1.      Evidence in the Record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While subjective symptom "testimony cannot be rejected on the sole

**MEMORANDUM DECISION AND ORDER - 18**

ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms] and [their] disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider"); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ discounted Petitioner's symptom testimony as inconsistent with the medical evidence and other evidence in the record. (AR 20-22.) The ALJ discussed the medical records relevant to the treatment of Petitioner's conditions and found the records establish Petitioner's MPA and hypertension significantly improved with treatment within twelve months of the alleged disability onset date. (AR 21.) The ALJ identified records reflecting Petitioner's MPA was in complete remission by August 12, 2019, and his hypertension had been reasonably well controlled since May 2018. (AR 652, 656.) The ALJ recognized Petitioner "may remain somewhat symptomatic with fatigue" despite the improvement of his MPA condition reflected in the records. (AR 21.)

Further, the ALJ noted Petitioner requires infusions every six months for his chronic kidney disease, but observed that Petitioner's MPA did not require dialysis or a kidney transplant, and there is no evidence that his hypertension requires emergency care, hospitalization, or resulted in significant end organ damage related to the heart, eyes, or brain. (AR 21.) The ALJ cited records reporting Petitioner's hypertension was generally "doing well" by May 30, 2018. Significantly, the ALJ noted Petitioner did not complain

**MEMORANDUM DECISION AND ORDER - 19**

of fatigue when seen by consultative examiner David R. Starr, Ph.D., for a psychological evaluation on March 24, 2020. (AR 21.)

Petitioner argues the ALJ erred in discrediting his statements based on the absence of any complaints of fatigue during Starr's evaluation. (Dkt. 16, 20.) Rather, Petitioner contends the records of Petitioner's treating physician, Keller, document malaise at every visit, and the lay witness statements endorse his complaints of persistent fatigue. The Court finds the ALJ reasonably concluded that certain medical records conflict with Petitioner's subjective complaints and support the ALJ's adverse credibility determination, with one exception.

Inconsistency with the medical record and other evidence is a specific, clear, and convincing basis for discrediting Petitioner's symptom statements. *Morgan*, 169 F.3d at 600.  The records identified by the ALJ as discussed above, except Starr's psychological evaluation, show Petitioner's conditions had significantly improved with treatment even though he may have experienced some lingering fatigue. This is a relevant factor to consider in evaluating Petitioner's testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv) (effectiveness of medical treatment). As to those records, the Court finds the ALJ provided a clear and convincing reason for discounting Petitioner's statements.[10]

---

[10] Absent any other clear and convincing reason, however, the lack of objective medical evidence to support Petitioner's subjective complains alone is insufficient to support the ALJ's credibility determination. *Burch*, 400 F.3d at 681.

**MEMORANDUM DECISION AND ORDER - 20**

However, the ALJ erred in relying on Starr's evaluation to discredit Petitioner's complaints of fatigue. Starr's evaluation did not assess Petitioner's physical symptoms, such as fatigue. Rather, the purpose of the evaluation was to assess Petitioner's "psychological functioning with particular regard to his [MPA] and chronic kidney failure and the extent to which those difficulties may contribute to his overall ability to work." (AR 691) (emphasis added). Thus, it does not necessarily follow that Starr's evaluation would include any physical limitations when describing Petitioner's daily activities. The ALJ's conclusion that the absence of any mention of fatigue in Starr's evaluation evidences a conflict between the record and Petitioner's symptom statements, is unreasonable and without support.

Having carefully reviewed the record and the written decision, the Court cannot conclude the ALJ's reliance on Starr's evaluation is harmless error. While the ALJ cites records other than Starr's evaluation to demonstrate incongruency between Petitioner's symptom statements and the medical evidence, the ALJ placed particular emphasis on Starr's psychological evaluation. (AR 21) ("It is significant to note that when the claimant was seen by consultative examiner David R. Starr, Ph.D., in March 2020, the claimant did not complain of fatigue."). Further, the ALJ relied on Starr's evaluation multiple times in her written decision to discredit Petitioner statements and evaluate the persuasiveness of medical opinion evidence. (AR 21-23.)

Conflicts between subjective complaints and objective medical evidence cannot form the sole basis for rejecting a claimant's testimony. *Burch*, 400 F.3d at 681. Remand

**MEMORANDUM DECISION AND ORDER - 21**

is therefore necessary, because the Court concludes below that the ALJ's other basis for rejecting Petitioner's testimony is legally insufficient.

### 2.    Activities of Daily Living

The ALJ's second reason for discrediting Petitioner's symptom testimony is inconsistency with Petitioner's activities of daily living. (AR 21.) Daily living activities may provide a basis for discounting subjective symptoms if the claimant's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. When considering a claimant's daily activities, an "ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch*, 400 F.3d at 681). The Court finds the ALJ erred in rejecting Petitioner's testimony as inconsistent with his daily activities.

The ALJ generally described Petitioner's daily activities as: attending to his personal care needs, getting his daughter ready for the day, preparing simple meals, handling money, drawing, watching television, small household chores, attending his child's activities, spending time with his girlfriend and daughter, and visiting his grandmother. (AR 21-22.) The ALJ concluded that these activities contradicted Petitioner's statements about his disabling symptoms and limitations, stating: "[o]verall, I find the claimant's activities of daily living suggest the claimant is not functionally impaired to the extent alleged." (AR 22.)

**MEMORANDUM DECISION AND ORDER - 22**

However, the daily activities identified in the ALJ's decision are not demanding and do not contradict Petitioner's claims of fatigue. *Garrison*, 759 F.3d at 1016. Daily activities performed at home are often not perfectly transferable to a work environment because of the instant availability of rest at home. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). This is an important consideration absent from the ALJ's analysis, because Petitioner consistently complained of fatigue limiting his daily activities and needing rest breaks during the day. (AR 39-42, 213, 217); *Garrison*, 759 F.3d at 1016 (stressing that ALJs must cautiously consider that impairments can preclude work and still be consistent with more than lying in bed all day).

Critically, the ALJ's description of Petitioner's daily activities fails to include Petitioner's reports of having to sit down to attend to his personal care; reliance on others to cook, drive, shop for him; that he does not shop or mow the lawn due to fatigue, and that he is "very limited" in his daily activities and social life. (AR 39-42, 220.) Nor does the ALJ acknowledge Petitioner's testimony that he cannot perform his daily activities, such as house cleaning, "all at one time." (AR 39.) Rather, Petitioner stated he could vacuum or clean one room at a time, and then would need to take a break before moving

**MEMORANDUM DECISION AND ORDER - 23**

to the next room. (AR 39-40.) Petitioner further testified that he relies on family members to complete certain house chores. (AR 40-41.)

Further, the ALJ did not specify which of Petitioner's daily activities purportedly conflicted with which of Petitioner's subjective complaints. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). Beyond conclusory findings, the ALJ did not explain how Petitioner's limited daily activities were inconsistent with his severe impairment or symptom statements. *Trevizo*, 871 F.3d at 676.

For these reasons, the Court finds the ALJ erred by omitting reference to relevant portions of the records when describing Petitioner's daily activities. Further, the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Petitioner's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). This is not to say there are no such reasons. Rather, the Court is unable to determine whether the ALJ properly evaluated the evidence, because the ALJ did not articulate which of Petitioner's daily activities are inconsistent with his complaints of disabling fatigue.

For instance, the daily activities Petitioner stated caused fatigue involved standing or walking, but Petitioner also reported engaging in a variety of daily activities from a

**MEMORANDUM DECISION AND ORDER - 24**

seated position without fatigue. Further, Petitioner's functional statement attributes his inability to engage in several daily activities due to weakness, anxiety, depression, side effects from medications, and body aches, rather than fatigue. (AR 212-220.) While the Court must consider the record as a whole in determining whether substantial evidence supports the ALJ's decision, the Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). "If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." *Id.* (quoting *Treichler*, 775 F.3d at 1103). Accordingly, remand is warranted on this issue.

The Court notes the ALJ concluded Petitioner's functional report "does not necessarily reflect the claimant's functional status over a 12-month period," because it was completed only one month after the alleged onset date while Petitioner was recovering from acute renal crisis. (AR 22.) This may be a clear and convincing reason to discredit Petitioner's statements in the report had the ALJ fully described Petitioner's statements of his daily activities, especially given the later medical evidence demonstrating significant improvement of Petitioner's conditions. On remand, the ALJ should reevaluate Petitioner's symptom testimony and provide specific, clear, and convincing reasons, if any, for rejecting the testimony.

**MEMORANDUM DECISION AND ORDER - 25**

### 3.    Lay Witness Statements

Petitioner submitted three lay witness statements. First, Petitioner's mother,

Ericema, drafted a letter dated March 3, 2020, describing Petitioner's limitations and

daily activities as follows:

> [H]e is fatigued often which leads to him having to rest a lot. His daily
> activities are limited. He is not independent like he used to be causing him
> to rely on help from family members. He suffers from severe depression
> and anxiety. Going out to stores and socializing is limited because it can
> trigger his autoimmune disease, plus anxiety. Activities such as sitting and
> standing for long periods of time are difficult.

(AR 261.) Second, Petitioner's grandmother, Norma, submitted a letter dated March 5,

2020, stating: Petitioner's "daily activities take a toll on his body" and that he gets tired if

he stands or walks too long. (AR 262.) Similar to Ericema's statement, Norma's letter

states Petitioner "is not the same person he was before," and that he relies on her to help

with his daughter and drive him places.

Third, Petitioner's girlfriend, Gisela, provided a statement describing Petitioner as:

> [S]omeone who struggles with normal day to day activities. He suffers from
> extreme fatigue not only from his condition but also from his medications
> and his IV infusion treatments, which he will have to do for the rest of his
> life according to his doctor. I know as much as he tries to resume his
> normal activities his body just gives up on him. I've seen him come home
> with swelling all over his body from simply walking and standing. Since
> his immune system is compromised he has taken extra precautions to
> protect himself at all times. It is very difficult for him to be around a lot of
> people or places that are not sanitized. Even ourselves [sic] as his close
> family members have to take extra precautions around him to not
> jeopardize his health any further. Sonny's life is nowhere near what it used
> to be. His diagnosis has brought a lot of hardships to him.

(AR 263.)

**MEMORANDUM DECISION AND ORDER - 26**

The ALJ concluded the lay witness statements are evidence from nonmedical sources and, thus, she was not required to articulate how she considered the evidence using the requirements in paragraphs (a)-(c) of 20 C.F.R. §§ 404.1520c and 416.920c. (AR 23.) Even so, the ALJ stated she "did review this evidence, along with all other evidence in the claim, before reaching the conclusion described in this decision." (AR 23.)

Petitioner contends the ALJ erred by dismissing the lay witness statements without providing germane reasons. (Dkt. 16.) Respondent maintains the ALJ considered the statements and any error by the ALJ's failure to discuss the evidence is harmless, because the statements describe limitations already recounted by Petitioner and rejected by the ALJ. (Dkt. 17 at 14-15.) The Court finds the ALJ erred for the reasons explained below.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The 2017 regulations adjusted the requirements for an ALJ's consideration of nonmedical evidence such as lay witness statements. Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other

**MEMORANDUM DECISION AND ORDER - 27**

evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ erred by failing to provide any reasons, let alone germane reasons, for discrediting the lay witness statement. That failure constitutes error.

Respondent argues the error was harmless. (Dkt. 17.) It is true that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness'] claims.'" *Molina*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Here, however, the ALJ erroneously discredited Petitioner's symptom statements and, therefore, cannot rely on that same erroneous reasoning to reject the lay witness testimony.

Moreover, the Court cannot confidently conclude the error was harmless.

**MEMORANDUM DECISION AND ORDER - 28**

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The lay statements are substantially similar in describing Petitioner's functional limitations in particular his fatigue and, thus, corroborate Petitioner's own symptom testimony if credited as true. Consequently, the ALJ could have arrived at a different conclusion regarding Petitioner's symptom testimony, the RFC assessment, and the disability determination.

Whether the record supports a different disability determination is not decided here. That is for the ALJ to determine in the first instance. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). Accordingly, remand is warranted on this issue.

## 4.    Conclusion

The Court will not address the remaining issues raised by Petitioner. As explained above, the ALJ erred in her reasoning concerning Starr's psychological evaluation, her consideration of Petitioner's symptom statements, and by failing to discuss the lay witness testimony. The ALJ's RFC assessment and disability determination are necessarily tethered to the ALJ's evaluation of the evidence relevant to Petitioner's functional limitations – specifically, the extent to which his fatigue limits his ability to

perform essential functions of a job. Thus, Petitioner's additional contentions of error must be addressed by the ALJ in the first instance when evaluating the evidence on remand, which the Court finds is warranted here. *See e.g., Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing with analysis of petitioner's remaining issues because "[t]he ALJ's . . . evaluations of [petitioner]'s credibility . . . are inescapably linked to conclusions regarding the medical evidence"); *Alderman v. Colvin*, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and other determinations).

The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Harman*, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes that remand for further proceedings is appropriate, because the circumstances of the case do not preclude the potential that further

**MEMORANDUM DECISION AND ORDER - 30**

administrative review will remedy the ALJ's errors. Properly credited, the lay witness statements bolster Petitioner's subjective complaints of fatigue, the ALJ's assessment of which is contested here. Remand will allow the ALJ to reconsider Petitioner's symptom statements in light of the lay witness statements. The Court therefore declines to exercise its discretion to remand for an immediate award of benefits. *See INS v. Ventura*, 537 U.S. 12, 16 (2002); *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."). Instead, the Court will remand the claim for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Because it is unclear whether Petitioner is disabled, the issues concerning Petitioner's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *Bunnell*, 336 F.3d at 1115-16.[11] The parties may freely take up the remaining issues and any other issues relevant to resolving Petitioner's claim of disability, before the ALJ.

On remand, the ALJ must reassess Petitioner's subjective complaints in conjunction with the third-party statements; next reassess Petitioner's RFC in light of the subjective symptom testimony and third-party testimony; and, thereafter proceed through

---

[11] This is not to say that the disability determination will or should be different in this case, only that the Court cannot determine that the outcome would remain the same upon a correct evaluation of the record.

**MEMORANDUM DECISION AND ORDER - 31**

the remaining steps of the disability analysis to determine what work, if any, Petitioner is

capable of performing that exists in significant numbers in the national economy.


## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).


DATED: March 31, 2022

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge